IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RICHARD LEE BRADLEY,              )
                                 )
        Petitioner,               )
                                 )  CIVIL ACTION NO. 09-00794-WS
vs.                               )  CRIM. ACTION NO. 08-00065-WS
                                 )
UNITED STATES OF AMERICA,         )
                                 )
                                 )
        Respondent.               )

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Richard Lee

Bradley's Motion to Vacate, Set Aside, or Correct Sentence under

28 U.S.C. § 2255 (Docs. 53, 55), the Government's Response in

opposition (Doc. 57), and Petitioner's reply thereto (Doc. 59).

This action was referred to the undersigned Magistrate Judge for

report and recommendation pursuant to 28 U.S.C. § 631(b)(1)(B)

and Rule 8(b) of the Rules Governing Section 2255 Cases and is

now ready for consideration.[1] Because the record is adequate to

_____

[1] The Honorable Chief United States District Judge William
H. Steele presided over the guilty plea proceedings in this
action and imposed the challenged sentence. On December 7, 2009,
Judge Steele referred the matter to the Undersigned Magistrate
Judge for entry of a Report and Recommendation. The Undersigned
has reviewed the Petitioner's motion and related documents, the
transcripts of the guilty plea hearing, the trial, and the
sentencing hearing, and all other relevant documents in the
Court's file and has fully familiarized herself with the
proceedings before Judge Steele. Based upon that review, the
Undersigned makes the following report and recommendation.

dispose of this matter, no evidentiary hearing is required.[2]
Having carefully reviewed the record, it is recommended that
Petitioner's Motion to Vacate, Set Aside, or Correct Sentence
(Doc. 55) be denied, that this action be dismissed, and that
judgment be entered in favor of Respondent, the United States of
America, and against Petitioner, Richard Lee Bradley.

## I.  **Background**

On February 28, 2008, Richard Lee Bradley was charged in a
single count indictment for knowing and willful distribution of
approximately one half gram of crack cocaine in violation of 21
U.S.C. § 841(a)(1), and 18 U.S.C. § 2. (Doc. 1). Attorney James
Scroggins was retained to represent Bradley on the charge. (Doc.
8).

On April 17, 2008, Bradley entered into a plea agreement
with the Government, wherein he agreed to plead to the single
count in the indictment. (Docs. 18, 45).  In the plea agreement,

---

[2] The undersigned finds that an evidentiary hearing would not
further the interests of justice or comport with the
considerations of judicial economy. Indeed, no evidentiary
hearing is required where, as here, Petitioner's claim is
"affirmatively contradicted by the record," is otherwise capable
of resolution based on the existing record, or is "patently
frivolous" for some other reason. See Aron v. United States,
291 F.3d 708, 715 (11th Cir. 2002); Schultz v. Wainwright, 701
F.2d 900, 901 (11th Cir. 1983).

Bradley waived his right to collaterally attack his sentence except in limited circumstances. Specifically, Bradley waived his right to appeal or collaterally attack his sentence except if the sentence imposed punishment in excess of the statutory maximum, if the sentence constituted an upward departure of the guideline range, or if a claim of ineffective assistance of counsel were asserted. (Doc. 18 at 9-10). As part of the plea agreement, Bradley and the Government stipulated that no agreement had been reached regarding the amount of drugs to be attributable to him and that the Court would make that determination at sentencing. (Doc. 18 at 13).

Bradley pled guilty to count one on April 17, 2008. (Doc. 19) and was sentenced on April 1, 2009. (Docs. 34, 39). At the sentencing hearing, the Government offered witnesses in an effort to establish the quantity of drugs which should be attributed to Bradley. After hearing the testimony, Judge Steele found that Bradley was responsible for 1.12 kilograms of crack cocaine and adopted the sentencing range of 188 – 360 months, as contained in the Presentence Report. (Doc. 45-1 at 26, 30). The Government, per the plea agreement, recommended that the Bradley receive a sentence at the low end of the applicable advisory guideline range. (Doc. 45-1 at 32). The Court imposed a sentence of 188 months imprisonment, which was to followed by supervised release for a term of six years. The

Court also imposed an assessment of $100.00.(Doc. 39 at 2-3, 5). Judgment was entered in the case on April 1, 2009. (Doc. 45-1).

Following the sentencing, Scroggins requested and was granted permission to withdraw, and attorney Gregory Hughes was appointed to represent Bradley on appeal. (Doc. 36). Subsequent thereto, Hughes filed an Anders brief with the Eleventh Circuit Court of Appeals, and requested permission to withdraw from further representation of Bradley.[3]  See (Doc. 52). On November 17, 2009, the Eleventh Circuit Court of Appeals found no issues of arguable merit, affirmed Bradley's conviction and sentence, and granted Hughes' motion to withdraw. (Id.).

On December 7, 2009, Bradley filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. 53). Bradley has raised the following claims: (1) ineffective assistance of trial counsel rendered his guilty plea invalid because counsel misinformed him about the amount of drugs he would be accountable for and his potential sentence reductions for assisting the government; (2)Bradley's conviction was obtained by a coerced confession; (3) Bradley's conviction

---

[3]  Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d. 493 (1967) ("[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.").

was obtained by "violations of the protection against self incriminations;" and (4)ineffective assistance of trial counsel "because lawyer could have protected me represented me better than he [did]."

## II. **Habeas Standard**

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A Petitioner who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. Addonizio v. United States, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).[4]

---

[4] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998)(citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990). A meritorious claim of ineffective assistance of counsel can constitute cause. U.S. v. Nyhuis, 211 F. 3d 1340, 1344 (llth Cir. 2000).

**III.**   **Analysis**

    **A.**   **Claims One and Four: Whether Trial Counsel's Ineffectiveness Rendered Bradley's Guilty Plea "Unlawfully Induced or Not Made Voluntary" and Resulted In Representation that Could Have Been Better**

In Claims One and Four, Bradley argues that his counsel was ineffective. (Doc. 55 at 4, 5). Specifically, Bradley asserts that his attorney coerced him to sign the plea agreement by telling him he "was being held accountable for 0.6 grams of cocaine base . . . stated [in my] indictment," and that if he "sign[ed] this plea the prosecutor or the government would be willing to make [] a motion for a 5k1 or a rule 35b at sentencing."[5] (Id. at 8). Bradley additionally claims that he "ask[ed] questions concerning [his] plea" and was told by Scroggins that he "would be more likely [to] get 2 or 3 years for government assistance." (Id.). Bradley contends that trial counsel's actions resulted in a plea agreement that was not voluntarily made. Bradley also contends that he had "not heard from [Scroggins] or discuss[ed] anything about my plea until the day [of] the plea hearing. All he told me [was] I would be getting my time cut in half and the prosecut[or] was very proud of the information that I gave her." (Id. at 9). According to

_____

[5] United States Sentencing Guidelines § 5k1.1, Substantial Assistance to Authorities: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines: (a) The appropriate reduction shall be determined by the Court…"; Federal Rules of Criminal Procedure 35(b) provides: (1) Upon the government's motion made within one year of sentencing, the court may reduce  a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person."

Bradley, Scroggins's lack of communication amounted to ineffective assistance of counsel because he could have provided better representation.

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508, 114 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). Accordingly, the Court begins its analysis of Bradley's claim by first considering the voluntariness and intelligence of Bradley's guilty plea. Under the Federal Rules of Criminal Procedure, a plea of guilty will be deemed voluntary, if before a guilty plea has been accepted, the "court address[es] the defendant personally in open court and determine[s] that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed.R.Crim.P. 11(b)(2). In the 11th Circuit, there is "a 'strong presumption' that statements made by a defendant during his plea colloquy are true." United States v. Cardenas, 230 Fed. Appx. 933, 935 (11th Cir. 2007)(citing United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). "[T]herefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.' Id.(quoting United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)).

In the present case, Bradley asserts that his conviction was obtained by a plea of guilty that was not voluntary and knowing. (Doc. 55 at 4). However, the record reflects that in accordance with Federal Rule of Criminal Procedure 11, Judge Steele conducted a thorough plea colloquy to ensure that Bradley's plea was knowing and voluntary.(Doc. 45 at 4-16).

Before the plea colloquy, Bradley was placed under oath and warned of the possibility of a perjury charge if he answered any of the Court's questions falsely during the proceedings. (Id. at 4). Bradley stated that he was thirty years old and had completed a year and a half of college. (Id. at 5). He denied ever being treated for any kind of mental illness or addiction to narcotic drugs of any kind. He also testified that he was not "under the influence of any drug, medication, or alcoholic beverage." (Id. at 5-6). Then, the following exchange took place between Judge Steele and Bradley[6]:

> THE COURT: Have each of you received a copy of the indictment in your case, had a full opportunity to read it and review it with your attorney, and do you understand the charge contained in the indictment?
>
> DEFENDANT BRADLEY:        Yes, sir.

---

[6] Bradley was questioned along with another defendant. The responses provided by the other defendant have been omitted as they are not relevant to any issue before the Court.

THE COURT: Are each of you fully satisfied with the representation that you've received from your attorney in this case, and have you fully discussed with your attorney all of the facts surrounding the charge?

DEFENDANT BRADLEY:       Yes, sir.

THE COURT: Now, I've been furnished a written plea agreement in each of your cases, and this plea agreement appears to have your signature at the end of the plea agreement and also at the end of the factual resume. Did you in fact sign the document . . . Mr. Bradley?

DEFENDANT BRADLEY:       Yes, sir.

THE COURT: By signing this document, you are acknowledging that you have read it and discussed it with your attorney, that you understand the terms and conditions of the plea agreement and factual resume, and that you agree with it . . . [i]s that true . . . Mr. Bradley?

DEFENDANT BRADLEY:       Yes, sir.

THE COURT: Have there been any promises made to you by anyone or has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way . . . Mr. Bradley?

DEFENDANT BRADLEY:       No, sir.

THE COURT: Now, the penalties that could be imposed if convicted are outlined in your plea agreement on page three . . . And for Mr. Bradley, if convicted of Count One of the indictment, you could receive a term of imprisonment up to 30 years, fine not to exceed two million dollars, supervised release term up to six years, and a mandatory special assessment of $100. Do you understand that?

DEFENDANT BRADLEY:          Yes, sir.

                          . . .

THE COURT: Now, the United States Sentencing
Commission has issued guidelines for judges
to consider in determining the sentence in a
criminal case. Have you and your attorney
talked about how those guidelines might
affect your case?

DEFENDANT BRADLEY: Yes, sir.

THE COURT: The way in which the Sentencing
Guidelines apply to your case might be
affected by what you say to the Court and to
the probation officer. The Court will not be
able to determine an appropriate sentence
for your case until after a presentence
report has been completed and you and the
United States have had an opportunity to
challenge the facts reported by the
probation officer. Do you understand that .
. . Mr. Bradley?

DEFENDANT BRADLEY: Yes, sir.

THE COURT: The sentence imposed might be
different from any estimate your attorney or
anyone else might have given you. Do you
understand that . . . Mr. Bradley?

DEFENDANT BRADLEY: Yes, sir.

THE COURT: After it has been determined what
guideline applies to a case, the judge has
the authority to impose a sentence that is
more severe or less severe than the sentence
called for in the Guidelines. Do you
understand that . . . Mr. Bradley?

DEFENDANT BRADLEY: Yes, sir.

THE COURT: Under some circumstances, you and
the United States may have the right to
appeal any sentence the judge imposes. For
instance, you can appeal your conviction if

you believe that your guilty plea was somehow unlawful or involuntary or of there's some other fundamental defect in the proceedings not waived by your guilty plea or your plea agreement. You also have the right to waive your right to appeal. And I see by your plea agreements that you are waiving your right to appeal any sentence imposed with the following exceptions: And that would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure from the guideline range, and any claim of ineffective assistance of counsel. Do you understand that . . . Mr. Bradley?

DEFENDANT BRADLEY: Yes, sir.


. . .


THE COURT: If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now. Do you understand that . . . Mr. Bradley?

DEFENDANT BRADLEY:      Yes, sir.

THE COURT:  You have the right to plead not guilty to any offense charged against you and to persist in that plea. You would then have the right to trial by jury. During that trial, you would have the right to the assistance of counsel for your defense and to the appointment of counsel if you could not afford to hire one, the right to see and hear all of the witnesses and have your attorney cross-examine them, the right to testify yourself or to decline to testify and remain silent, and the right to have the Court issue subpoenas for any witnesses you wish to call in your defense.

At the trial, you would be presumed to be innocent, and the United States would have the burden of proving that you are guilty beyond a reasonable doubt. Before you can be convicted, all 12 jurors must be convinced that the United States has met that burden.

If you are found guilty after a trial, you would then have the right to appeal that conviction to a higher court and if you could not afford to pay the cost of an appeal, the Government would pay those costs for you. Do you understand that . . . Mr. Bradley?

DEFENDANT BRADLEY: Yes, sir.

THE COURT: If you plead guilty, however, and if the Court accepts your plea, there will be no trial; you will be waiving or giving up your right to trial and all other rights that I just described. Do you understand that? . . . Mr. Bradley?

DEFENDANT BRADLEY: Yes, sir.

THE COURT: Also included in your plea agreement or factual resume is a statement of the elements of the offense. . . . And, Mr. Bradley, the factual resume in your case contains a statement of the elements of the offense charged in Count One of the indictment, which states a violation of 21, United States Code, Section 841(a)(1). And the elements of that offense are that you possessed the controlled substance as charged, in this case, crack cocaine; and that you possessed the drug with the intention to distribute it to another. Do you understand that those are the elements of the offense to which you are pleading guilty?

DEFENDANT BRADLEY: Yes, Your Honor.

THE COURT: And do you fully understand that if there was a trial in this case, the United States would be required to present sufficient evidence to prove each of these essential elements beyond a reasonable doubt?

DEFENDANT BRADLEY: Yes, your honor.

THE COURT: Also included in factual resume is a statement of facts. Did you in fact, commit the acts and do the things that you have admitted to in this statement of facts?

DEFENDANT BRADLEY: Yes.

THE COURT: Then I find the facts and acts to which you admit support a violation of the charge contained in Count One of the indictment. How do you now plead to that charge, guilty or not guilty?

DEFENDANT BRADLEY: Guilty.

THE COURT: And Mr. Scroggins, are you aware of any reason the Court should not accept Mr. Bradley's guilty plea at this time?

MR. SCROGGINS: No, sir.

THE COURT: Then it is finding of this Court in the case of the United States of America versus . . . Richard Bradley that each of you are fully competent and capable of entering an informed plea, that you are aware of the nature of the charge and the consequences of your plea, and that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted, and each of you are now adjudged guilty of that offense.

(Id. at 6-16).

A defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977). Thus, Bradley bears the burden of demonstrating that the statements he made during the plea colloquy were false. He has failed however to offer a sufficient argument, to identify sufficient evidence to rebut the presumption, or to convince the Court of any error in the trial's court's determination that his plea was knowing and voluntary.

While Bradley asserts that his plea was involuntary or somehow coerced, there is no evidence to support this contention. The record is totally devoid of any evidence that suggests that Bradley's plea was involuntary or unlawfully induced. Indeed, the record reflects that Judge Steele expressly cautioned Bradley that his sentence could be higher than he had been advised by his attorney or anyone else, and expressly advised him of the maximum sentence that the was facing. Armed with this information, Bradley freely chose to pled guilty. Having done so, he has presented no basis for now claiming that his plea was not voluntary.

Bradley likewise had failed to proffer facts in support of his contention that his counsel was ineffective because: 1)

trial counsel incorrectly informed him that he would be accountable for only 0.6 grams of cocaine base; 2) trial counsel told him that the government would be willing to make a motion for a sentence reduction under U.S.S.G. § 5k1 or Fed. R. Crim. P. 35(b) if he signed the plea agreement; and 3)trial counsel failed to discuss anything about the plea with Bradley until the day of the hearing, and then only told him that his sentence would be cut in half due to information he provided to the prosecutor.

In <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), the Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. <u>Id.</u> at 687. The court announced the now-familiar test: a defendant claiming ineffective assistance of counsel must show (1) "that counsel's representation fell below an objective standard of reasonableness," <u>id.</u> at 688, and (2) that counsel's deficient performance prejudiced the defendant. <u>Id.</u> at 687. The Eleventh Circuit has explained that:

> The <u>Strickland</u> test applies to challenges of guilty pleas, as well as to convictions by jury. <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). In this context, the first prong of <u>Strickland</u> requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. <u>See id.</u> at 369-70. The second prong "focuses on whether counsel's

> constitutionally ineffective performance affected the outcome of the plea process," meaning the defendant must show "a reasonable probability that, but for counsel's errors," he would have entered a different plea. <u>Id.</u> at 370 (stating the test in the context of an accepted guilty plea); <u>see also</u> <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991) (applying the test to a rejected plea agreement).

<u>Scott v. U.S.</u>, 325 Fed. Appx. 822, 824 (11th Cir. 2009) (unpublished).[7]

Additionally, the law is clear that:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. <u>Cf.</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 133-134, 102 S. Ct. 1558, 1574-1575, 71 L. Ed. 2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

---

[7] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." <u>Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC</u>, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

> defendant must overcome the presumption
> that, under the circumstances, the
> challenged action "might be considered sound
> trial strategy." See Michel v. Louisiana,
> supra, 350 U.S., at 101, 76 S. Ct., at 164.
> There are countless ways to provide
> effective assistance in any given case.
> Even the best criminal defense attorneys
> would not defend a particular client in the
> same way.

Strickland, 466 U.S. at 689. The record in this action fails to support Bradley's claim that counsel's advice was deficient, or that, if deficient, Bradley was prejudiced thereby.

As set forth above, the record of the guilty plea hearing shows that Judge Steele questioned Bradley pointedly about his discussions with his attorney and his understanding of the charges against him and the plea agreement. Bradley acknowledged that he fully discussed his case, including the charges and the plea agreement, with his attorney, that he understood the charges and the plea agreement, and that he was satisfied with the representation and advice given by his counsel. (Doc. 45 at 6). Moreover, as noted supra, Judge Steele informed Bradley of the essential nature of the charge to which he was pleading guilty, the consequences of a guilty plea, and the fact that he faced a maximum possible penalty of 30 years on that charge. (Id. at 8). Judge Steele also cautioned Bradley that his sentence would be determined by the Court and that it could be different from any estimate his attorney might have given him.

(Id. at 10). Judge Steele also informed Bradley that if he pled guilty, he was waiving his right to a trial on the charge. (Id. at 13). Bradley stated that he understood each of these conditions and confirmed that no one had forced him to plead guilty, nor had anyone induced him to plead guilty with promises or assurances of any kind but that he was pleading guilty because he was guilty. (Id. at 7, 15).

Bradley's complaints about his counsel's inaccurate representations cannot now overcome his sworn testimony, during the plea colloquy, that he was not promised what sentence he would receive, and that he understood that he could not rely on what anyone told him about what sentence he might receive. Further, at the time Bradley pled guilty to the indictment, the State had compiled strong evidence against him, including his post-Miranda incriminating statements and other defendants willing to testify against him on the drug charge. See (Doc. 45-1 at 5-20). Given this evidence, and Bradley's extensive prior criminal history[8], his attorney's advice that he plead guilty rather than go to trial did not fall outside the range of objective reasonable advice. As noted by Judge Steele at sentencing, Bradley "received the benefit of his bargain" by

_____

[8] The Presentence Investigation Report details Bradley's criminal history and assigns 15 criminal history points. (Doc. 26 at 8-12).

receiving 188 months of a potential 30 year sentence. (Doc. 45-1 at 36). Moreover, assuming *arguendo* that Bradley's trial counsel misinformed him about the amount of crack cocaine he would be accountable for and overstated Bradley's potential 5k sentence reductions, such is not sufficient, in and of itself, to establish that counsel's advice to plead guilty to the charge "fell below an objective standard of reasonableness" given Bradley's sworn statements during the plea colloquy. See Johnson v. U.S., 2009 WL 995472, *6 (M.D. Fla. 2009) (unpublished)("[C]onsidering the nature of the charges and the evidence available to the government, counsel's advice that petitioner plead guilty rather than go to trial did not fall below an objective standard of reasonableness . . . That the attorney's prediction turned out to be mistaken, and his estimate of the sentencing guidelines erroneous, does not constitute ineffective assistance of counsel in and of itself and does not undermine the knowing and voluntary nature of Petitioner's guilty pleas.").

Additionally, Bradley has failed to meet the second prong of the Strickland test. A defendant who alleges ineffective assistance of counsel is subject to an even higher burden regarding the prejudice prong: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial." <u>Hill</u>, 474 U.S. at 59. Bradley does not allege, much less attempt to establish, that but for counsel's misrepresentations, he would have insisted on going to trial. As noted supra, the record in this case demonstrates the Court conducted a thorough *Rule 11* plea colloquy, wherein Bradley was advised of the consequences of his guilty plea, of the nature of the charges, of the maximum penalty he faced, that the Court would make the ultimate sentencing determination and that Bradley would not be able to withdraw his plea if his sentence was more severe than anticipated. (Doc. 45 at 8-10). Bradley acknowledged that he understood and elected to pled guilty. (Id. at 15). His sentence of 188 months was substantially lower than the maximum of 360 months which he faced. Given the evidence against Defendant, and his prior extensive criminal history, Bradley has not argued, and the Court has not found, any facts which suggest that there is a reasonable probability that, but for counsel's alleged errors, Bradley would not have pleaded guilty and would have insisted on going to trial. Thus, Bradley cannot demonstrate that he was prejudiced by his counsel's actions. Accordingly, Claims One and Four of Bradley's habeas petition are due to be **DENIED**.

**B. <u>Claims Two and Three: Coerced Confession and Violations of the Protection against Self-Incrimination</u>**

Bradley also argues that his conviction was illegally acquired through the use of a coerced confession obtained by agent Winifield and that his "conviction[] [was] obtained by [] violations of the protection against self-incriminations" committed by Agents Hewitt and Winfield. (Doc. 55 at 4-5). These claims lack merit. The Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." United States v. Bousley, 523 U.S. 614, 621 (1998). Therefore, "when the judgment of a conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569 (1989). In other words, "A defendant's [unconditional] plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel [generally] waives all non-jurisdictional defects in that defendant's court proceedings." United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997); Langford v. United States, 2009 U.S. Dist. LEXIS 127453 (S.D. Ala. October 23, 2009).

In the present case, Bradley's claims alleging violation of his Fifth Amendment right to protection from self-incrimination were waived by virtue of the entry of his counseled guilty plea. Spear v. Sec'y Dep't of Corr., 2006 U.S. Dist. LEXIS 28202, *36 (M.D. Fla. 2006)("A defendant's properly counseled and entered

plea of guilty admits all elements of a formal criminal charge and waives a multitude of federal constitutional rights, including the privilege against compulsory self-incrimination…."); See United States v. Farquharson, 252 Fed. Appx. 982 (11th Cir. 2007) ("As for Farquharson's first argument, because he entered an unconditional guilty plea, thus waiving all nonjurisdictional defects, including any challenge to the district court's denial of his motion to suppress, we will not consider the claim."); United States v. Crumpton, 222 Fed. Appx. 914, 916 (11th Cir. 2007)("Our circuit law is clear that when a defendant enters a voluntary, unconditional guilty plea, he waives the right to challenge all nonjurisdictional defects in the proceedings, which would include a court's denial of a motion to suppress."), cert. denied, 552 U.S. 894, 128 S.Ct. 240, 169 L.Ed. 2d. 158 (2007).

As discussed supra, Bradley entered into a knowing and voluntary plea agreement which was accepted by the Court after Judge Steele conducted a thorough Rule 11 plea colloquy. Additionally, a review of the record does not reveal any additional evidence that would cast doubt on the voluntariness of the plea. Accordingly, Bradley's pre-guilty plea claims involving his Fifth Amendment right to protection from self-incrimination are due to be dismissed as they were waived by Bradley when he pled guilty.

## IV. <u>Certificate of Appealability</u>

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(2006).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of

appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under §2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

None of Bradley's claims are such as would warrant the issuance of a Certificate of Appealability. As previously established, Bradley waived claims Two and Three when he entered into a valid plea agreement; thus, a reasonable jurist could not conclude that this Court is in error in invoking that procedural bar with respect to Bradley's coerced confession claim. See Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). In addition, reasonable jurists could not debate whether Bradley's claims One

and Four, alleging ineffective assistance of counsel, should be resolved in a different manner or deserve to proceed further. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a certificate of appealability, and likewise deny any motion for leave to appeal *in forma pauperis.*

## V.    Conclusion

For the foregoing reasons, it is the recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 55) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Richard Lee Bradley. The Undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a certificate of appealability, nor leave to appeal *in forma pauperis*. It is so recommended.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the **15th** day of **February**, **2011**.


_____
/s/SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.   *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation'[9] within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.